RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/29/11
gDB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

VERSUS

EDGAR B. BRANCH

DOCKET NO. 1:07-cr-10029-01

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

This matter was referred to the undersigned Magistrate Judge for report and recommendation.

Statement of the Claim

Before the court is a motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. §2255 by petitioner Edgar B. Branch (Branch) on March 24, 2011 (Doc. 122). Branch attacks the validity of his 2008 conviction by a jury in the United States District Court for the Western District of Louisiana, Alexandria Division for voluntary manslaughter pursuant to 18 U.S.C. §1112. Branch was sentenced to 120 months imprisonment which was to run consecutively. Branch was further ordered to pay restitution in the amount of $5,839.53; however, a special assessment in the amount of $100 was waived. Branch was also ordered to serve a term of three years on supervised release once he is released.

Branch filed an appeal with the United States Court of Appeals for the Fifth Circuit (Court of Appeals Docket Number 09-30181) arguing that the evidence presented at trial was insufficient to support his conviction as it really showed he acted under duress.

In an opinion rendered December 4, 2009, the Fifth Circuit affirmed Branch's conviction stating it would not second guess the jury's decision to believe witness testimony that the victim told Branch he would be spared nor would it re-weigh the evidence. U.S. v. Branch, 352 Fed.Appx. 970 (5th Cir. 2009).

Thereafter, Branch's petition for writ of certiorari to the United States Supreme Court was denied. Branch v. U.S., 130 S.Ct. 2076 (2010). Branch filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255. In it, Branch set forth nine separate arguments as to why his trial counsel was ineffective and one reason as to why his appellate counsel was ineffective.

Rule 8(a) Resolution

This court is able to resolve the merits of this Section 2255 application without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the petitioner, and the court records provide the required and adequate factual basis necessary to the resolution of the Section 2255 application. U.S. v. Green, 882 F.2d. 999, 1008 (5th Cir. 1989); Section 2255 Rule 8(a).

Law of §2255

There are four grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) the sentence was imposed in violation of the Constitution or the laws of the United

States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or, (4) the sentence is "otherwise subject to collateral attack". 28 U.S.C. §2255; United States v. Cates, 952 F.2d 149, 151 (5th Cir. 1992), cert. denied 504 U.S. 962 (1992). The scope of relief under Section 2255 is consistent with that of the writ of habeas corpus. Cates, 952 F.2d at 151. Also, U.S. v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. §2255 is reserved for the transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal but were not, may not be asserted in a collateral proceeding. U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Also, U.S. v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995). A collateral challenge may not do service for an appeal. After conviction and exhaustion and waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted. U.S. v. Shaid, 937 F.2d 228, 231-231 (5th Cir. 1991), cert. denied, 502 U.S. 1076 (1992). Even if a defendant raises a constitutional error, he may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the

error. U.S. v. Mimms, 43 F.3d 217, 219 (5th Cir. 1995), and cases cited therein.

A claim may not be reviewed under 20 U.S.C. §2255 absent a showing of cause and prejudice or actual innocence. U.S. v. Hicks, 945 F.2d 107, 108 (5th Cir. 1991). Moreover, a prisoner who shows the possibility of prejudice may not obtain collateral relief under Section 2255 without demonstrating cause for his failure to raise the error at trial or on direct appeal. U.S. v. Shaid, 937 F.2d at 229.

Cause is demonstrated by showing objective external factors which prevented the petitioner from having raised the instant claim previously, and actual prejudice resulting from the error. The earlier proceeding may nonetheless be excused if the petitioner can show that a fundamental miscarriage of justice would result from a failure to entertain the claim i.e. the petitioner must make a colorable showing of actual innocence. U.S. v. Flores, 981 F.2d 231, 235-236 (5th Cir. 1993). Also, McCleskey v. Zant, 499 U.S. 467, 495 (1991). Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies cause and prejudice. U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

The cause and prejudice test; however, does not apply to claims of ineffective assistance of counsel which are ordinarily brought for the first time on collateral review.

## Statement of the Case

On the morning of April 20, 2007, Tyrone Johnson (Johnson) stabbed Derrick Sparks in the neck as he was entering his unit at United States Penitentiary in Pollock, Louisiana ("USP Pollock"). Thereafter, Johnson attacked Derrick Sparks cell mate, Edgar Branch. Johnson knocked Branch to the floor and proceeded to stab him. At a break in the fight, Johnson walked off with his back to Branch and Branch got up, went to his cell and armed himself with two homemade knives which he strapped to his hands. Johnson then strapped knives to his own hands and the two engaged in a knife fight. This fight resulted in Branch stabbing Johnson who was transported to the hospital where he died three days later.

## Law and Analysis

### Strickland

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein. Also, U.S. v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994). As all of Branch's allegations are ineffective assistance of counsel claims, they will each be analyzed below pursuant to the two part Strickland test.

Speedy Trial

Branch was indicted on November 29, 2007 and appeared for his initial appearance and arraignment on December 12, 2007 (Doc. 8). After a telephone conference with all attorneys on December 19, 2007, a trial date of July 14, 2008 was set (Doc. 15). Soon thereafter, Branch began filing motions to have his attorney removed for failure to spend enough time with him and work on his case (Doc. 17, 18). At no time during the filing of these motions or at the hearing held to determine the status of representation did Branch assert the indictment should be dismissed for failure to comply with the Speedy Trial Act.

The arguments asserted by Branch regarding the complexity of his case and the need for an opportunity to interview witnesses

were the same ones that formed the basis of his motion to continue the trial date. Based upon these very arguments, the district judge found the ends of justice would be served if a continuance was granted. Thus, it was.

Branch has not asserted any resulting prejudice from the failure to seek dismissal. He fails to present probative evidence that a motion to dismiss for speedy trial violations would have been granted or that there was a reasonable probability that the filing of such a motion would have yielded a different outcome. Accordingly, this claim for ineffective assistance of counsel lacks merit.

Defense of Others

Branch argues that his trial attorney was ineffective for failing to put on a defense of others justification defense. In support, Branch contends Johnson stated he was going to kill all of the "crackers" in the unit so Branch acted in defense of other white inmates. Branch points to his sworn affidavit as well as that of Michael Henderson who was a witness for the defense but failed to testify regarding Johnson's alleged statement.

A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Richards v. Quarterman, 566 F.3d 553, 564 (5th Cir. 2009) (quoting Virgil v. Dretke, 446

F.3d 598, 608 (5th Cir. 2006) (citations omitted). See also Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997))(citing Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983)(citing Fitzgerald v. Estelle, 505 F.2d 1334 (5th Cir. 1974), cert. denied 422 U.S. 1011 (1975); Daniels v. Maggio, 669 F.2d 1075 (5th Cir. 1982), cert. denied 459 U.S. 968 (1982). Branch fails to prove that he and his attorney had any discussions regarding Johnson's comment, hatred of whites and/or propensity to cause them harm. Even if counsel was aware of the statement and Johnson's hatred of whites, Branch has failed to show credible evidence existed to establish a defense of others justification defense. Accordingly, he would not have a duty to assert a frivolous defense.

Instead he made a well reasoned tactical decision to pursue self defense as he had the evidence and a basis for that defense.

Use of Restraints

Branch states that on the second day of trial, he was viewed by the jury while in handcuffs and his attorney should have requested a mistrial. Specifically, he points to the statement by defense counsel assistant that Branch was seen by the jury in shackles earlier that morning (Doc. 113-1, p.22).

The trial transcript reveals that court commenced at 8:58 a.m. on the second day of trial and that at roughly 9:30 a.m., defense counsel asked the district judge for a recess. No other recess was taken that morning.

Mr. Blanchard: Mr Branch has to use the bathroom very bad.

The Court: He is not shackled or anything, is he?

Mr. Blanchard: No. Huh-uh.

It is thereafter that defense counsel's assistant notes Branch was seen by the jury in shackles earlier that morning and defense counsel is quick to note that they are not complaining about that incident. The transcript indicates Branch was released from restraints prior to trial commencing that day and Branch does not argue otherwise. In fact, Branch gives no details about when, where and how long the jury saw him restrained. Nor does he establish how he and his case were prejudiced as a result.

Having no evidence that the sighting by the jury was anything other than brief and/or incidental, there is no merit to his claim. Counsel had no duty to make a frivolous motion. Having been aware of that, he advised that he was not complaining to the court about the incident.

Not only does Branch fail to satisfy the first prong of the Strickland test, but he also fails to satisfy the second. There is neither argument nor evidence that a motion for a mistrial would have been granted and the outcome of his case would have been different. Thus, this contention lacks merit.

Witness Testimony

Branch further argues that his counsel failed to argue it would have been physically impossible for government witness

Alexander Blackmon to hear that to which he testified. Specifically, Branch contends video evidence shows that Blackmon was too far away from he and Johnson to hear Johnson tell Branch he would spare him.

Blackmon recounted what he saw and heard during the altercation between Branch and Johnson. Thereafter, Branch's counsel cross examined Blackmon in such a way as to undermine his credibility. He questioned him about his lengthy sentence for drug and weapons violations as well as the discrepancies between his trial testimony and his testimony before the grand jury. The fact counsel did not question Blackmon regarding hearing Johnson's statement amounts to a reasonable and informed tactical decision in which he sought to call Blackmon's credibility into question before the jury.

While Branch contends that the outcome of the trial would have been different had counsel pursued the line of questioning regarding his ability to hear Johnson, he has not proven the same. Had counsel questioned Blackmon, there is no indication he would have changed his testimony. There is no certainty that counsel would not have elicited other testimony which was detrimental to Branch's case. Further, counsel could have come across as badgering the witness which would not have sat well with a jury. Instead, counsel made the sound decision to elicit answers to questions which would call his credibility into question.

Hearsay Evidence

Branch contends that counsel failed to object to the introduction of hearsay testimony. First, he contends that Blackmon's testimony regarding Johnson sparing him was hearsay testimony and no exceptions to the hearsay rule apply. However, Branch fails to provide any support for his views. Had Branch more thoroughly reviewed the hearsay exceptions, he would have noted that Johnson's statement would fall under the excited utterance exception. Counsel is not obligated to make meritless objections and petitioner has neither shown that counsel's failure to object was not the result of reasonable professional judgment or that counsel's judgment fell below an objective standard of reasonableness.

Additionally, Branch's contention that counsel was ineffective for failure to object to Jayson Brown's testimony that Branch disclosed details about the fight and stabbing as well as the motivation behind the incidents is also without merit. Without more, Branch contends the testimony was hearsay evidence. However, a review of the testimony reveals that the exception as to existing mental, emotion or physical condition applies. Accordingly, there was no basis for an objection and counsel was not ineffective.

Cross Examination

Branch also contends that counsel failed to adequately cross examine government witnesses. Cross examination is certainly a

matter of trial strategy which is entitled to substantial deference upon review. Branch failed to suggest what his attorney could have or should have done to question or discredit the witnesses. Without more, Branch cannot establish counsel's deficiency or prejudice under Strickland.

Prosecutorial Misconduct

Branch argues that the prosecutor engaged in pervasive misconduct and that his counsel failed to object to the same. Specifically, he contends that the prosecutor: withheld material exculpatory and impeachment evidence favorable to the defense; made material misrepresentations to the court; and, mischaracterized critical testimony and misstated evidence.

Branch concedes that he has no direct evidence that the prosecutor withheld evidence. In fact, the evidence which he contends was withheld was known to both he and his counsel prior to trial. Counsel even argued for the inclusion of the information but the judge correctly determined that a riot which occurred after the fight was irrelevant and could not be introduced. Even if it had been included, Branch fails to show how this information would have changed the outcome of his trial. Evidence of a race riot after the commission of the offense does not prove Branch's claim that he feared black inmates.

The same is true for Branch's argument that the prosecutor lied when he said the knife fight and subsequent race riot in the

dining hall were not interrelated. The prosecutor's statement was made during argument in opposition to defense counsel's urging that evidence of the dining hall riot be admitted. There was no need for counsel to make further objections to the statement as he was already doing so. Furthermore, there was no basis to claim prosecutorial misconduct because the statement was simply an argument that the riot, which occurred after the fight and stabbing had no effect on Branch's state of mind before or during the offense. Thus, as the trial judge witnessed and decided, they were not interrelated.

Finally, there is no evidence presented by Branch that statements made by the prosecutor substantially affected his right to a fair trial. The statements made by the prosecutor in closing arguments were a summary of the evidence in his own words and those words were a fair representation of the testimony at trial. Simply because a witness' exact words were not used is of no consequence. As Branch's contention that there was prosecutorial misconduct lacks merit, there was no basis for counsel to object.

<u>Testifying</u>

Branch argues that counsel not only failed to tell him he could testify but that counsel refused to allow him to testify at trial. In support, he provides his own affidavit which states his attorney told him "no, I'm not putting you on the stand, the judge

isn't letting any of that stuff in." (Doc. 122-2 p. 4).[1] However, "[a] defendant who argues that his attorney prevented him from testifying must still satisfy the two prong test of Strickland...." U.S. v. Harris, 408 F.3d 186, 192 (5th Cir. 2005), cert. denied 546 U.S. 919 (2005), citing, United States v. Mullins, 315 F.3d 449, 452 (5th Cir. 2002); Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001).

Branch's statement show that he and his counsel discussed his right and desire to testify. Branch provides no other details of the conversation so it is unknown what was discussed and what it was that Branch told counsel he wanted to state at trial. It also shows that Branch knew he had a right to testify and that counsel advised against doing so.

If Branch had testified at trial, it would have opened the gate to cross examination and the introduction of evidence such as prior bad acts. Counsel knew that the government would attempt to discredit Branch and rip apart his defense. Thus, it was sound trial strategy to counsel ones client not to testify on his own behalf.

---

[1] In his affidavit, Branch states his attorney never advised him of his constitutional right to testify in his own defense and that he was unaware of his right. Branch's claim he was unaware of his right is undermined by his prior statement that he wanted to testify and the statement in his petition that the issue before the court was not whether Branch was informed of his right to testify but rather that he was not allowed to testify. (Doc. 122-1, p. 38; 122-2, p. 4).

Though, Branch contends he was prohibited from testifying, not simply counseled against it, he fails to provide any specifics regarding his attempts to testify on his own behalf or how his counsel actually prevented him from asserting his right to testify. Further, there is no indication from the trial transcript that Branch ever asserted his desire to testify.

Having not satisfied his burden of proof under Strickland, Branch's contention has no merit.

Sentencing

Branch contends his counsel failed to object to the retroactive application of 18 U.S.C. §1112 as amended effective January 7, 2008. 18 U.S.C. §1112 provides the definition and penalty for both voluntary and involuntary manslaughter. The 2008 amendment changed the maximum sentences for manslaughter. Specifically, voluntary manslaughter was changed from "ten years" to "15 years" and involuntary manslaughter changed from "six years" to "8 years".

The Ex Post Facto Clause of the United States Constitution bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000)(citing Lynce v. Mathis 519 U.S. 433, 445-446 (1997); California Dept. of Corr. v. Morales, 514 U.S. 499, 508-509 (1995) and Collins v. Youngblood, 497 U.S. 37, 42 (1990)). See also U.S. v. Kimler, 167 F.3d. 889, 893 (5th Cir. 1999). Thus,

because the effective date of the amendment, January, 7 2008, was subsequent to the commission of the crime, April 20, 2007, the prior version applied.[2]

It is clear from the record that the amended version of 18 U.S.C. §1112 was used in calculating the sentence and that counsel failed to recognize the prior version was applicable to Branch's case. Although he argued in a lengthy and well reasoned motion for a downward departure (Sealed Document 98-1, p. 2), counsel, in a footnote, stated that, pursuant to §1112, the maximum term of imprisonment for manslaughter was 180 months (15 years). During the sentencing, counsel again argued for a downward departure but failed to address the erroneous application of the amended version of §1112.

With respect to prejudice, it is noted that the applicable guideline range, which was based on a maximum possible penalty of 15 years, was 151 to 188 months.[3] From that, the district court judge found a downward departure pursuant to 5K2.10 was applicable and imposed a sentence of 120 months, ten years. If a downward departure had been applied to the proper maximum possible penalty of 10 years, the sentence would have certainly been different. Accordingly, Branch's argument that his attorney was ineffective

---

[2] Neither the statute itself, legislative history nor case law indicates that the 2008 amendment to 18 U.S.C. §1112 is to be applied retroactively.

[3] See Doc. 26, p. 26 and 28

for failing to argue against the retroactive application of §1112 as amended in 2008 should be granted and Branch should be re-sentenced.

Appellate Counsel

In his final claim regarding ineffective assistance of counsel, Branch claims "appellate counsel provided constitutionally ineffective assistance [of] counsel when he failed to argue on appeal that Branch had been denied his constitutional right to present a complete defense." (Doc. 122-1, p. 42). However, at no point does Branch discuss what exactly appellate counsel did or failed to do. Instead he discusses the dining hall riot and the district judge's alleged error in failing to admit the evidence. Accordingly, Branch has failed to articulate a claim for ineffective assistance of counsel against his appellate counsel and the contention lacks merit.

Conclusion

Based on the foregoing discussion,

IT IS RECOMMENDED that Branch's motion to vacate, set aside or correct sentence be GRANTED with respect to his claim that counsel was ineffective for failing to argue improper application of 18 U.S.C. §1112 as amended effective January 7, 2008.

IT IS FURTHER RECOMMENDED that Branch be re-sentenced applying 18 U.S.C. §1112 as it existed at the time of the offense, April 20, 2007.

IT IS FURTHER RECOMMENDED that all other claims regarding ineffective assistance of counsel be DISMISSED with prejudice.

Certificate of Appealability

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed findings of fact and/or the proposed legal conclusions reflected in this Report & Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except on grounds of plain error. See Douglass v. United States Automobile Assocation, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days**

**from his service of this Report & Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana this 29th day of July, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE